IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JARRETT HAMPTON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:17-CV-299 |
| | § | |
| DR. PAUL C. BRINDLEY and DR. | § | |
| EDGAR HULIPAS, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jarrett Hampton (TDCJ #816800) is currently incarcerated in the Texas Department of Criminal Justice – Correctional Institutions Division ("TDCJ"). Hampton has filed a complaint under 42 U.S.C. § 1983 (Dkt. 1), alleging that Dr. Paul C. Brindley and Dr. Edgar Hulipas denied him adequate medical care in violation of his constitutional rights. Dr. Brindley has filed a motion to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. 8) and Dr. Hulipas has filed a motion for judgment on the pleadings under Rule 12(c) (Dkt. 16). Hampton has filed a response to both motions (Dkts. 10, 18) and he has requested leave to file an amended complaint (Dkt. 17). In addition, both defendants ask the Court to stay all upcoming deadlines pending a ruling on their dispositive motions (Dkts. 12, 16). After reviewing all of the pleadings, the parties' briefing, and the applicable law, the Court will **GRANT** the defendants' motions to dismiss, but will allow Hampton to file an amended complaint regarding his claims against Dr. Hulipas for the reasons that follow.

## I. BACKGROUND

Hampton is presently confined by TDCJ at the Darrington Unit in Rosharon, Texas (Dkt. 1 at p. 1).[1] Dr. Brindley is a physician employed by the University of Texas Medical Branch ("UTMB") at the Otolaryngology Department in Galveston (*Id.* at p. 3). Dr. Hulipas is a physician employed by UTMB who works at the Darrington Unit (*Id.*). Unless otherwise specified, the following summary of Hampton's claims is taken from an attachment to his complaint (Dkt. 1-1 at pp. 1-2).

Hampton alleges that he was treated at the UTMB Ear, Nose, and Throat ("ENT") Clinic on May 24, 2011, for a "soft tissue anomaly" on the bridge of his nose, which was expressing pus (Dkt. 1 at p. 4). The physician he saw initially diagnosed a nasal obstruction and recommended "'septorhinoplasty' surgery" with an "inferior 'turbinate reduction.'" Hampton was then referred to Dr. Brindley, who is an ENT specialist.

During a telemed video-conference on June 28, 2011, Dr. Brindley confirmed the initial diagnosis and approved surgical treatment for a deviated septum. Dr. Brindley stated that he would try to schedule the surgery in July or August of 2011. After enduring sinus problems and frequent nose bleeds for three and a half years, Hampton was finally scheduled for surgery on January 12, 2015.[2] The surgery was aborted because Hampton had an acute sinus infection and a "skin columellar lesion" on his nose

---

[1] For purposes of identification all page numbers reference the pagination imprinted on each docket entry by the Court's electronic filing system, CM/ECF.
[2] According to Dr. Brindley, the procedure was not scheduled promptly because Hampton advised providers in August 2011 that his condition had improved such that surgery was unnecessary (Dkt. 8 at p. 3).

that was eventually diagnosed as sarcoidosis in December 2015.[3] Hampton blames Dr. Brindley for delaying his surgery for three and a half years. As a result of the delay, Hampton reportedly suffered "an acute sinus infection; incurred the loss of smell and taste; has frequent nose bleeds, drainage of puss, and nasal pain; and has contracted sarcoidosis," which has prevented any further surgical treatment for his deviated septum.

Hampton's claims against Dr. Hulipas concern a delay in treatment for sarcoidosis by specialists at the UTMB Dermatology Department in Galveston. After Hampton's initial diagnosis of sarcoidosis was confirmed in March 2016, Hampton was advised by a specialist with the UTMB Dermatology Department to notify a doctor at his prison unit if there were any "new abnormal changes" in his medical condition before his next follow-up appointment, which was scheduled for September 2016. At some undisclosed point, Hampton developed a new lesion on the inner roof of his mouth, which reportedly caused the center column of his nose to begin separating from his face. Hampton sent an inmate request form to Dr. Hulipas at the Darrington Unit and asked for an immediate referral to the Dermatology Department concerning his symptoms of sarcoidosis. On May 31, 2016, Dr. Hulipas responded by advising Hampton that a referral had been made, apparently referencing the appointment already scheduled for September 2016, but Dr. Hulipas did not inquire further or conduct a physical evaluation of Hampton's symptoms to determine whether an earlier referral was needed.

---

[3] Sarcoidosis is a chronic, systemic granulomatous disease of unknown cause, which is characterized by nodular inflammatory lesions that can affect any organ or tissue. *See generally,* STEDMAN'S MEDICAL DICTIONARY 831, 832, 1719 (28th ed. 2006); DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1668 (32nd ed. 2012).

Hampton contends that Dr. Hulipas was grossly negligent and violated his constitutional rights by failing to conduct a physical evaluation of his symptoms in May 2016. As a result, Hampton was not seen by a specialist in the Dermatology Department until September 2016. Hampton contends that the delay caused him "pain and suffering" while he waited for treatment by a specialist. Hampton seeks compensatory and punitive damages from both defendants under 42 U.S.C. § 1983 for violating his rights under the Eighth Amendment (Dkt. 1 at p. 4).

## II.    STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." A motion for judgment on the pleadings under Rule 12(c) is determined by the same standards applicable to a motion under Rule 12(b)(6), which authorizes dismissal for failure to state a claim upon which relief may be granted. *See Phillips v. City of Dallas*, 781 F.3d 772, 775 (5th Cir. 2015). In reviewing a motion under Rule 12(b)(6), a court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (citation omitted). To withstand a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If the complaint has not set forth "enough facts to state a claim to relief that is plausible on its face," it must be dismissed. *Id.* at 570.

In reviewing the pleadings, the Court is mindful of the fact that the plaintiff in this case proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard a *pro se* plaintiff must allege more than "labels and conclusions' or a 'formulaic recitation of the elements of a cause of action[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted).

## III.   DISCUSSION

### A.   The Claims Against Dr. Brindley Are Untimely

Dr. Brindley moves to dismiss the claims against him because they are barred by the governing statute of limitations. Hampton's civil rights claims under 42 U.S.C. § 1983, which borrows the forum state's general personal injury limitations period, are governed by the two-year statute of limitations provided by Texas law. *See Gartrell v. Gaylor*, 981 F.2d 254, 56-57 (5th Cir. 1993) (per curiam) (citing Tex. Civ. Prac. & Rem. Code § 16.003(a)). This means that Hampton had two years from the time that his claims accrued to file a civil rights complaint concerning his allegations. *See Gonzalez v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998). Federal law determines when a cause of action accrues under § 1983. *See Smith v. Regional Transit Auth.*, 827 F.3d 412, 421 (5th Cir. 2016). A cause of action accrues "when the plaintiff knows or has reason to know of the

injury which is the basis of the action." *Id.* (citing *Gartrell*, 981 F.2d at 257). In other words, "the limitations period begins when the plaintiff is in possession of the critical facts that he has been hurt and who has inflicted the injury." *Id.* (citation and internal quotation marks omitted); *Caudra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 814 n.7 (5th Cir. 2010) ("A general cause of action accrues when the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.").

Hampton claims that Dr. Brindley violated his constitutional rights by delaying surgery that was approved in 2011, for three and a half years, until January 12, 2015 (Dkt. 1-1 p. 1). Hampton argues that his claim against Dr. Brindley did not accrue until his diagnosis of sarcoidosis was finally confirmed on March 1, 2016 (Dkt. 10 at pp. 6-7). It is well established, however, that a cause of action accrues when a plaintiff knows he has been injured, and not when he later becomes aware of the injury's full extent. *See, e.g., Wallace v. Kato*, 549 U.S. 384, 391 (2007) (observing that "[a] cause of action accrues even though the full extent of the injury is not then known or predictable"). Actual knowledge is not required "if the circumstances would led a reasonable person to investigate further." *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995) ("A plaintiff need not realize that a legal cause of action exists; a plaintiff need only know the facts that would support a claim.").

Hampton knew or should have known of his claim for delayed medical care when his surgical procedure was aborted due to complications on January 12, 2015. Because Hampton did not execute his complaint against Dr. Brindley until well over two years

later on September 28, 2017 (Dkt. 1 at p. 5), his claim against Dr. Brindley for delaying surgery is untimely and subject to dismissal. *See Gartrell*, 981 F.2d at 257. Accordingly, Dr. Brindley's motion to dismiss will be granted.

**B.      Alternatively, the Claims Against Dr. Brindley Are Unexhausted**

Even if timely filed, Dr. Brindley argues further that federal review of the claim against him is barred by the Prison Litigation Reform Act (the "PLRA"), because Hampton did not properly exhaust available administrative remedies before filing suit in federal court. *See* 42 U.S.C. § 1997e(a). The PLRA prohibits any action by a prisoner in federal court under 42 U.S.C. § 1983 concerning "prison conditions" until "such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement found in § 1997e(a) applies to all inmate suits about prison life, "whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The Supreme Court has repeatedly emphasized that § 1997e(a) mandates exhaustion of all administrative procedures before an inmate can file any suit challenging prison conditions. *See Booth v. Churner*, 532 U.S. 731, 739 (2001); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *see also Jones v. Bock*, 549 U.S. 199, 212 (2007) (confirming that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

It is well established that TDCJ has a formal two-step administrative grievance process. *See, e.g., Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004); *Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998) (outlining the two-step procedure, which at Step

1 entails submitting an administrative grievance at the institutional level followed by a Step 2 appeal if the result is unfavorable).  According to the procedure that is outlined in the TDCJ Offender Orientation Handbook, an inmate has "15 days from the date of the alleged incident or occurrence of the issue presented" in which to complete a Step 1 grievance form and forward it to the unit grievance investigator ("UGI").  *See* TDCJ Offender Orientation Handbook, at 73-74 (Feb. 2017), available at https://www.tdcj.state.tx.us/documents/Offender_Orientation_Handbook (last visited July 23, 2018).  If the inmate is not satisfied with the result he received in the Step 1 response, he may appeal the decision by filing a Step 2 grievance form within 15 days from the return date shown on the front of the grievance form.  *See id*. at 74.

Hampton, who has attached Step 1 and Step 2 grievance forms to his original complaint (Dkt. 1-2 at pp. 1-4),[4] argues that he has exhausted administrative remedies where Dr. Brindley is concerned because he mentions the delay in surgery (Dkt. 10 at pp. 8-12).  The Step 1 grievance submitted by Hampton is dated May 31, 2016 (Dkt. 1-2 at pp. 1-2), which is well outside the 15 day time limit to complain about the care provided by Dr. Brindley in January 2015.  Moreover, neither the Step 1 nor the Step 2 grievance forms submitted by Hampton reference Dr. Brindley or Hampton's claim that Dr. Brindley was to blame for delaying his surgery (Dkt. 1-2 at pp. 1-4).  Instead, Hampton complains primarily about Dr. Hulipas failing to make an emergency referral to his

---

[4] Because Hampton has attached these grievances as exhibits to his complaint, they are considered part of the complaint "for all purposes." Fed. R. Civ. P. 10(c).  Thus, the Court may consider these exhibits for purposes of the motion to dismiss under Rule 12(b)(6).  *See United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 375 (5th Cir. 2004).

dermatology doctor in Galveston (*Id.*). The UGI and the TDCJ Health Services Division official who responded to these grievances investigated Hampton's claims about Dr. Hulipas and advised Hampton on August 26, 2016, that a referral had been made and that he had upcoming appointments with dermatology in September 2016 and with an ENT specialist in October 2016 (*Id.* at pp. 2, 4).

By not filing a grievance against Dr. Brindley within the 15-day time limit, Hampton failed to comply with prison procedures. Substantial compliance with available process is not enough to exhaust remedies under the PLRA. *See Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010) ("Under our strict approach, we have found that mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion."). The Supreme Court has emphasized that the exhaustion requirement found in the PLRA, 42 U.S.C. § 1997e(a), mandates "proper exhaustion," *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), which demands compliance with prison procedural rules. As the Supreme Court has recognized, "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 524. By requiring exhaustion of administrative remedies, Congress hoped that "corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.* (citing Booth, 532 U.S. at 737). In addition to filtering out potentially frivolous claims, Congress also believed that internal review would facilitate adjudication of cases ultimately brought to court by giving prison

9

officials an opportunity to develop an administrative record that clarifies the contours of the controversy. *Id*. (citations omitted).

Hampton's failure to comply with prison procedures by filing a timely grievance setting forth his claims against Dr. Brindley means that he did not exhaust available administrative remedies in compliance with prison procedures with respect to those claims or the PLRA. Noting that exhaustion is mandatory, the Supreme Court has recently emphasized that "a court may not excuse a failure to exhaust, even to take [special] circumstances into account." *Ross v. Blake*, — U.S. —, 136 S. Ct. 1850, 1856-57 (2016) (citations omitted); *see also Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) (emphasizing that "pre-filing exhaustion of prior grievance process is mandatory" and that district courts lack discretion to excuse a prisoner's failure to exhaust his administrative remedies). Because it is apparent that Hampton failed to exhaust available administrative remedies regarding his claim against Dr. Brindley before filing suit in federal court, his complaint against Dr. Brindley must be dismissed for this additional reason.[5] For this additional reason, Dr. Brindley's motion to dismiss will be granted.

---

[5] In addition, Dr. Brindley argues that the allegations against him fail to state a claim, noting that surgery was delayed at Hampton's request after Dr. Brindley was advised that his conditions had improved (Dkt. 8 at pp. 3, 11). Hampton does not dispute that he told a unit medical provider on August 29, 2011, that his condition had improved and that surgery may not be needed (Dkt. 10 at p. 19). Hampton argues that Dr. Brindley violated his rights nevertheless because he did not follow up to confirm that surgery was actually unnecessary (*Id.*). Because this argument relies on facts outside of the pleadings, it is not one that can be considered under the standard of review that applies to motions under Rule 12(b)(6). Accordingly, the Court does not address this argument further.

### C. The Claims Against Dr. Hulipas

#### 1. Official Immunity

Dr. Hulipas argues that he is entitled to official immunity from the claims brought against him for actions taken while employed by TDCJ. In that regard, the Eleventh Amendment bars a suit for money damages against TDCJ, as a state agency, under 42 U.S.C. § 1983. *See Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). The Eleventh Amendment also bars a suit for money damages against TDCJ employees in their official capacity. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2001); *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). To the extent that Hampton sues Dr. Hulipas for monetary damages in his official capacity as a state employee, those claims must be dismissed.

#### 2. Qualified Immunity

Dr. Hulipas argues that he is entitled to official immunity from the claims brought against him in his personal or individual capacity. Public officials acting within the scope of their authority generally are shielded from a suit for monetary damages by the doctrine of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A plaintiff seeking to overcome qualified immunity must satisfy a two-prong inquiry by showing: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted). Thus, the defense of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 355, 341 (1986).

Dr. Hulipas argues that he is entitled to qualified immunity and dismissal of the complaint against him because Hampton does not allege sufficient facts showing that he was personally involved in making treatment decisions or that a constitutional violation of the Eighth Amendment occurred. To succeed in stating a claim in this context a prisoner must demonstrate "deliberate indifference" to a "serious medical need" that poses a violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment where delayed access to medical care is concerned, a prisoner must allege facts showing that he suffered "substantial harm" as the result of the defendant's deliberate indifference. *See Rogers v. Boatright*, 709 F3d 403, 410 (5th Cir. 2013) (noting that "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference that *results in substantial harm*") (emphasis in original); *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (same).

The Eighth Amendment deliberate indifference standard is an "extremely high" one to meet. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). To establish deliberate indifference in violation of the Eighth Amendment, a prisoner must show that the defendant was both (1) aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn, and (2) subjectively drew an inference that such potential for harm existed. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Actions and decisions by officials that are merely inept, erroneous, ineffective or negligent" do not amount to deliberate indifference. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998). A showing of deliberate

indifference to medical needs requires the prisoner to submit evidence that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks omitted).

Hampton does not allege facts showing that Dr. Hulipas had any personal involvement beyond receiving Hampton's inmate request form, which inquired about a referral to the UTMB Dermatology Department for symptoms of sarcoidosis (Dkt. 1-1 at pp. 1-2). Noting that a referral had been made and that Hampton already had an appointment set for September 2016, Dr. Hulipas responded on May 31, 2016, by encouraging Hampton to keep his scheduled appointments (*Id*. at p. 2). Hampton does not assert that Dr. Hulipas had any previous personal involvement with his medical care as a treating physician or that Dr. Hulipas was aware of an excessive risk to Hampton's health, but deliberately ignored Hampton's request for a referral. Likewise, Hampton does not provide any information about what treatment he received when he finally saw a specialist in September 2016, and he does not otherwise allege specific facts showing that he was substantially harmed by having to wait to see a specialist. Therefore, based on the current state of the pleadings, the Court concludes that Hampton has not demonstrated that Dr. Hulipas acted with the requisite deliberate indifference and he has not adequately articulated a violation of the Eighth Amendment where Dr. Hulipas is concerned. Accordingly, Dr. Hulipas's motion for judgment on the pleadings will be granted.

**D.     Hampton's Motion for Leave to Amend**

Hampton has requested leave to file an amended complaint in this case. Because it would futile to allow an amendment of the claims against Dr. Brindley, which are time-barred and unexhausted for reasons set forth above, those claims will be dismissed with prejudice. However, in abundance of caution, the Court will allow Hampton to file an amended complaint setting out with more detail his claim that Dr. Hulipas violated the Eighth Amendment by delaying his access to medical care for sarcoidosis when he failed to inquire further by conducting a physical examination in May 2016 or to make a referral for Hampton to return to the UTMB Dermatology Department before his scheduled appointment was set to occur in September 2016.

**IV.     CONCLUSION AND ORDER**

Based on the foregoing, the Court **ORDERS** as follows:

1. The motion to dismiss filed by Dr. Paul Brindley (Dkt. 8) is **GRANTED**. The claims against Dr. Brindley are **SEVERED** from this case and will be **DISMISSED** with prejudice.

2. The motion for judgment on the pleadings filed by Dr. Edgar Hulipas (Dkt. 16) is **GRANTED**.

3. The motion for leave to amend filed by Plaintiff Jarrett Hampton (Dkt. 17) is **GRANTED**, in part. Hampton shall file an amended complaint, limited to the claims against Dr. Hulipas in his individual capacity, within **thirty (30) days** of the date of this order. Plaintiff's failure to comply as directed within the

14

time allowed will result in the dismissal of this case under Rule 41(b) of the Federal Rules of Civil Procedure.

4. All other deadlines in this case are **STAYED** pending the plaintiff's compliance with the Court's order granting him leave to amend. The Court will issue a new scheduling order, if necessary, after the plaintiff has filed an amended complaint in compliance with the Court's instructions and the Court has completed the screening required by the Prison Litigation Reform Act, 28 U.S.C. § 1915A, which governs this case. As a result, the defendants' motions requesting a stay of upcoming deadlines (Dkts. 12, 16) are **MOOT**.

The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties of record.

SIGNED at Galveston, Texas, this 27th day of July, 2018.

_____
George C. Hanks Jr.
United States District Judge